Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.737.2222

R. Charles Henn Jr., (*pro hac vice* pending)
chenn@kilpatricktownsend.com
Charles H. Hooker III, (*pro hac vice* pending)
chooker@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; **ADIDAS AG**, a foreign entity; and **ADIDAS INTERNATIONAL MARKETING B.V.**, a foreign entity,<br><br>                    Plaintiffs,<br><br>        v.<br><br>**SKECHERS USA, INC.**, a Delaware corporation,<br><br>                    Defendant. | No.  3:15-cv-1741<br><br>**COMPLAINT**<br>(Trademark and Trade Dress Infringement, Unfair Competition, Trademark and Trade Dress Dilution, Deceptive Trade Practices, and Breach of Contract)<br><br>**DEMAND FOR JURY TRIAL** |

1-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

Plaintiffs adidas America, Inc., adidas AG, and adidas International Marketing B.V. (collectively, "adidas") state the following for their Complaint against Defendant Skechers USA, Inc. ("Skechers").

## I. INTRODUCTION

1. One of the most iconic shoes in history is the adidas "Stan Smith" sneaker, which adidas introduced in the early 1970s featuring a classic tennis-shoe profile with a sleek white leather upper, three rows of perforations in the pattern of the well-known Three-Stripe trademark, a defined stitching across the sides of each shoe enclosing the perforations, a raised mustache-shaped colored heel patch, which often is green, and a flat tonal white rubber outsole (the "STAN SMITH Trade Dress"):



2. Skechers recently began offering for sale a shoe, depicted below, that it describes on its website as having a "[s]mooth leather and synthetic upper in a lace up classic sporty tennis-style sneaker with stitching, overlay and perforation accents" (the "Stan Smith Knock-Off"):



2-    COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

And lest there be any doubt about Skechers's bad-faith intent to imitate the STAN SMITH Trade Dress, the Stan Smith Knock-Off has been promoted using the terms "adidas stan smith" and "adidas originals" in the keyword metadata for this shoe on Skechers's website.[1]

3.      Further, for decades, adidas has manufactured, sold, and promoted footwear under its famous Three-Stripe trademark (the "Three-Stripe Mark").  adidas owns numerous incontestable federal trademark registrations for its Three-Stripe Mark for apparel and footwear, and adidas has invested tens of millions of dollars building its brand in connection with the Three-Stripe Mark.

4.      Despite Skechers's knowledge of adidas's rights in the famous Three-Stripe Mark—including a 1995 contractual agreement not to infringe adidas's Three-Stripe Mark—Skechers recently began selling footwear featuring three parallel stripes on the side of the shoe, including the "Relaxed Fit Cross Court TR" footwear depicted below (the "Three-Stripe Knock-Off"):



5.      In addition to its famous Three-Stripe Mark and STAN SMITH Trade Dress, adidas has, for over a decade, manufactured, sold, and promoted footwear under its well-known and federally registered SUPERNOVA trademark (the "SUPERNOVA Mark").[2]  As with the

---

[1] Further evidencing Skechers's bad faith, Skechers's website employs other adidas trademarks, such as SPRINGBLADE, in its website's metadata.

[2] Collectively, adidas's STAN SMITH Trade Dress, Three-Stripe Mark, and SUPERNOVA Mark are referred to herein as the "adidas Marks."  Skechers's footwear, described in Paragraphs 2 – 5 above, that infringes the adidas Marks is collectively referred to herein as the "Infringing Footwear."

3-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

Stan Smith Knock-Off and the Three-Stripe Knock-Off, Skechers has been blatantly trading off of the goodwill associated with adidas's SUPERNOVA Mark by offering for sale footwear under the name "Supernova," as depicted below in a screen shot from Skechers's website:



6.    The Skechers footwear depicted above uses substantially identical imitations of the adidas Marks in a manner that is likely to cause consumer confusion and deceive the public regarding its source, sponsorship, or affiliation.  Skechers's actions are irreparably harming adidas's brand and its extremely valuable adidas Marks.

7.    This is, therefore, an action at law and in equity for breach of contract, as well as for trademark infringement and dilution, unfair competition, and unfair business practices arising

4-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (2009) ("Lanham Act"); the anti-dilution laws of several states; the fair business practices and unfair and deceptive trade practices acts of several states; and the common law.  Among other relief, adidas asks this Court to: (a) preliminarily and permanently enjoin Skechers from marketing or selling footwear using or bearing confusingly similar imitations of the adidas Marks; (b) award adidas monetary damages and to treble that award; (c) require Skechers to disgorge all of its profits from its sales of the Infringing Footwear; and (d) award adidas punitive damages, attorneys' fees, and costs.

## II.    PARTIES

8.      Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

9.      Plaintiff adidas International Marketing B.V. is organized under the laws of the Netherlands, having a principal place of business at Atlas Arena Offices, Africa Building, Hoogoorddreef 9-A, 1101 BA Amsterdam Zuidoost, Netherlands.

10.     Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217.  adidas America, Inc. directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for ADIDAS-branded merchandise, including goods bearing the distinctive adidas Marks.  adidas AG, adidas International Marketing B.V., and adidas America, Inc., as well as any predecessors or related entities, are collectively referred to herein as "adidas."

11.     On information and belief, Defendant Skechers USA, Inc. is a Delaware corporation with its principal place of business at 228 Manhattan Beach Boulevard, Manhattan Beach, California 90266.

5-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

### III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  Subject matter jurisdiction over adidas's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

13.    This Court has personal jurisdiction over Skechers because Skechers has entered into contracts with adidas in Oregon, and because, on information and belief, (a) Skechers has marketed, distributed, offered for sale, and/or sold to persons within the State of Oregon; (b) Skechers regularly transacts and conducts business within the State of Oregon; and/or (c) Skechers has otherwise made or established contacts within the State of Oregon sufficient to permit the exercise of personal jurisdiction.

14.    The District of Oregon is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to adidas's claims occurred in this District.

### IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    adidas's Famous STAN SMITH Trade Dress**

15.    adidas's STAN SMITH shoe is an iconic low-top tennis shoe which adidas introduced to the market in the early 1970s.

16.    The STAN SMITH Trade Dress features a distinctive appearance, including a classic tennis-shoe profile with a sleek white leather upper, three rows of perforations in the pattern of the well-known Three-Stripe Mark, a defined stitching across the sides of each shoe enclosing the perforations, a flat tonal white rubber outsole, a raised mustache-shaped colored heel patch in colors such as green, white, blue, and gold, among others.

17.    The STAN SMITH Trade Dress was named after acclaimed American tennis champion Stan Smith, who at the time of the shoe's naming was the No. 1 tennis player in the world.

6-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

18.     Since introducing its STAN SMITH Trade Dress over forty years ago, adidas has spent millions of dollars promoting the product and its appearance.  The STAN SMITH shoe is one of adidas's best-selling shoes of all time, having sold more than 40 million pairs worldwide.

19.     Over forty years after its introduction, the STAN SMITH Trade Dress remains immensely popular.  In 2014, for example, it was named "Shoe of the Year" by Footwear News. *See* Christian Allaire, "Shoe of the Year: Adidas STAN SMITH," *Footwear News*, December 2, 2014, a true and correct copy of which is attached as **Exhibit 1**.

20.     adidas's STAN SMITH shoes have been worn and popularized by a wide variety of athletes, musicians, artists, and other celebrities, including the Rolling Stones, David Bowie, Marc Jacobs, John Lennon, David Beckham, Pharrell Williams, and Kanye West.  *See* Gary Aspden, "Why the adidas Stan Smith Is the Most Important Sneaker of All-Time," http://ca.complex.com/sneakers/2015/09/why-the-adidas-stan-smith-is-the-most-important-sneaker-of-all-time, a true and correct copy of which is attached as **Exhibit 2**.  Recently, STAN SMITH footwear has been prominently featured on the popular American adult animation sitcom, *American Dad*, shown on TBS and Fox in late 2014.

21.     The fame and popularity of the STAN SMITH Trade Dress is further evidenced by unsolicited media coverage, including the following:

a.     Dennis Green, "The 18 most important sneakers of all time," *Business Insider*, July 18, 2015, ranking the STAN SMITH shoe as the No. 9 most important sneaker of all time;

b.     Rachael Allen, "Celebrities Continue to Choose Adidas STAN SMITH Sneakers This Summer," *Footwear News*, July 7, 2015, noting "a slew of celebrities have continued to adopt the [STAN SMITH] style as their go-to street look";

7-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

c.   Troy Patterson, "STAN SMITH, Accidental Sneaker Icon," *The New York Times*, May 5, 2015, noting the STAN SMITH shoes "are a favorite among a wide array of people in the art world and the image business, with fans ranging from Marc Jacobs and Phoebe Philo to David Bowie and Pharrell Williams";

d.   Rory Satran, *i-D*, "how did the adidas STAN SMITH become the ultimate fashion shoe?", May 26, 2015 ("STAN SMITH is to sneakers as Levi's are to jeans and Kim Kardashian's Instagram is to selfies: the ultimate expression of the form.");

e.   "10 Fresh Pairs of White Sneakers to Wear (Aside from Your STAN SMITHs)," *InStyle*, February 4, 2015 ("It's safe to say we are all well acquainted with the term 'athleisure,' and if there is one shoe that has defined that trend, it's the Adidas STAN SMITH.");

f.   Nathalie Atkinson, "So long, stilettos: Why 2014 was the year women's footwear fell to Earth," *The Globe and Mail*, December 23, 2014 ("Footwear News's Shoe of the Year award went to the STAN SMITH, Adidas's antiseptic white leather tennis shoe, the sneaker style recently championed by Phoebe Philo and worn by an otherwise naked Gisele Bundchen in Paris Vogue.");

g.   Nick Engvall and Russ Bengston, "The 30 Most Influential Sneakers of All Time," *Complex*, May 14, 2013, ranking the STAN SMITH shoe as No. 19 in the most influential sneakers of all time;

h.   *ShortList Magazine*, "The 10 Greatest Ever Trainers," February 28, 2013, featuring the STAN SMITH shoe among the ten greatest ever trainers;

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

i.     Adam Leaventon, "The 50 Greatest Tennis Sneakers of All Time," *Complex*, October 18, 2012, ranking the STAN SMITH shoe as the No. 4 greatest tennis sneaker of all time; and

j.     Nick Santora, "The 50 Most Influential Sneaker Sponsorships in Sports History," *Complex*, October 16, 2012, ranking STAN SMITH's contract with adidas as No. 13 on the 50 most influential sneaker sponsorships in sports history.

True and correct copies of the above-referenced articles are collectively attached as **Exhibit 3**.

22.     As a result of adidas's extensive use and promotion of its STAN SMITH Trade Dress, adidas has built up and now owns valuable goodwill that is symbolized by the trade dress. The purchasing public has come to associate the STAN SMITH Trade Dress with adidas. adidas's STAN SMITH Trade Dress is distinctive and has achieved significant secondary meaning. Indeed, the STAN SMITH Trade Dress is famous and has been widely heralded as one of the most important and most well-known shoe designs in history.

23.     The combination of elements comprising the STAN SMITH Trade Dress is nonfunctional, in that it is not essential to the use or purpose of the shoe, it does not reduce the cost or improve the performance of the shoe, and its use by adidas does not put competitors at any significant non-reputation-related disadvantage. Indeed, competitors, such as Skechers, have available a multitude of alternative sneaker designs they could use; the only reason to mimic the iconic STAN SMITH Trade Dress is to attempt to trade off its tremendous goodwill and siphon away sales from adidas.

**B.    adidas's Famous Three-Stripe Mark**

24.     adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, sportswear, and sporting equipment. Over sixty (60) years ago, adidas first placed three parallel stripes on its athletic shoes, and the Three-Stripe Mark

9-   COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2222
Fax: 503.727.2222

21184-0111/127843147.1

came to signify the quality and reputation of adidas footwear to the sporting world early in the company's history.

25.    At least as early as 1952, adidas began using the Three-Stripe Mark on footwear sold in the United States and worldwide.  The Three-Stripe Mark quickly came to signify the quality and reputation of adidas footwear.  Examples of adidas's footwear bearing the Three-Stripe Mark are depicted below, and pages from adidas's catalogs featuring footwear bearing the Three-Stripe Mark are attached as **Exhibit 4**.

| **Ultra Boost** | **Samba** |
|:---:|:---:|

 

| **Superstar** | **STAN SMITH** |
|:---:|:---:|

 

26.    adidas is the owner of a federal trademark registration, Reg. No. 1,815,956, issued by the United States Patent and Trademark Office ("PTO") on January 11, 1994, for the Three-Stripe Mark, as depicted below, for "athletic footwear."

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 5**.

       27.     adidas is the owner of a federal trademark registration, Reg. No. 1,833,868, issued by the PTO on May 3, 1994, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 6**.

       28.     adidas is the owner of a federal trademark registration, Reg. No. 2,278,589, issued by the PTO on September 21, 1999, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

Affidavits have been filed pursuant to Sections 8 and 15 and the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 7**.

29.    adidas is the owner of a federal trademark registration, Reg. No. 3,029,129, issued by the PTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, covering "footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 8**.

30.    adidas is the owner of a federal trademark registration, Reg. No. 3,029,135, issued by the PTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, covering "footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 9**.

31.    adidas owns numerous additional trademark registrations, a number of which are incontestable, for the Three-Stripe Mark covering footwear and various items of apparel including U.S. Reg. Nos. 870,136, 961,353, 2,016,963, 2,058,619, 2,278,591, 2,284,308,

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

2,909,861, 2,999,646, 3,029,127, 3,063,742, 3,063,745, 3,087,329, 3,183,656, 3,183,663, and 3,236,505.  Copies of the Certificates of Registration for each of these marks are attached collectively as **Exhibit 10**.

32.    Additionally, adidas owns federal registrations for verbal trademarks using the term "3 stripes" including THE BRAND WITH THE 3 STRIPES, Reg. No. 1,674,229, for "sport and leisure wear."  Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 11**.

33.    adidas's Three-Stripe Mark is well-known and famous and has been for many years.  adidas has used the Three-Stripe Mark in connection with its frequent sponsorship of musical artists, including pop stars Katy Perry and Selena Gomez and iconic rappers B.o.B, Snoop Dogg, Pharrell Williams, and Kanye West.

34.    adidas also has used the Three-Stripe Mark in connection with its frequent sponsorship of athletic tournaments and organizations, as well as professional athletes and collegiate sports teams.  For example, adidas has had longstanding relationships with the University of California at Los Angeles, the University of Nebraska, Arizona State University, the University of Louisville, Mississippi State University, and the University of Miami.  Among many others, adidas sponsors:  (a) NFL stars Aaron Rodgers, DeMarco Murray, Jimmy Graham, Von Miller, Sammy Watkins, and Robert Griffin III; (b) NBA stars Tim Duncan, James Harden, John Wall, Damian Lillard, and Derrick Rose; (c) baseball players Josh Harrison, Justin Upton, Kris Bryant, Carlos Gomez, Melvin Upton Jr., and James Shields; (d) professional golfer Sergio Garcia; and (e) internationally famous soccer players David Beckham and Lionel Messi.  For decades, adidas also has sponsored the world-famous Boston Marathon, along with many other events, teams, and individuals.

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

35.    The Three-Stripe Mark is nonfunctional, and the public recognizes and understands that the Three-Stripe Mark distinguishes and identifies adidas's footwear.  Indeed, unsolicited media coverage has referred to "the iconic adidas three stripes" (Brettman, Allan, "World Cup Brings New Shoes, Uniforms from Adidas, Nike," *The Oregonian*, Feb. 17, 2014), adidas's "trademark three-stripe sneakers" (Brettman, Allan, "Adidas lifts 2012 forecast as sales in China soar in Q1," *The Oregonian*, May 1, 2012), "the adidas stripes" (Brettman, Allan, "A $35 Swoosh of Genius," *The Oregonian*, June 16, 2011), adidas's "ubiquitous three stripes" (Brettman, Allan, "Going 'All In' Against Nike," *The Oregonian*, March 15, 2011), the "trademark three-stripe logo" (Pennington, Bill, "Belts That Do More Than Hold Up Pants," *New York Times*, July 27, 2009), the "iconic three stripes" ("Game Time," *Footwear News*, June 16, 2008), the "signature three stripes" (Moore, Booth, "Ringing Endorsements; Form Follows Function with Much Olympic Wear, but Fashion and Funding are also at Play," *L.A. Times*, August 13, 2004), the "famous brand with the three stripes" (Whiting, Sam, "Must Have," *San Francisco Chronicle*, July 7, 2002), and the "legendary Adidas three stripes" ("Coty Inc.," *Brand Strategy*, September 27, 1999).

36.    For decades, adidas extensively and continuously has used and promoted the Three-Stripe Mark in connection with footwear and apparel.  In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.  The Three-Stripe Mark has achieved international fame and tremendous public recognition.

37.    Since introducing its Three-Stripe Mark, adidas has spent millions of dollars promoting the mark and products bearing the mark.  For example, in March 2011, adidas launched an advertising campaign in the United States "featuring Chicago Bulls guard Derrick Rose, rapper B.o.B and pop singer Katy Perry, among others," that "highlights [adidas's] imprint on the worlds of sports, music and fashion," and "show[s] the breadth and depth of the Adidas

14-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

brand." A March 15, 2011, article from *The Oregonian* describing this advertising campaign is attached as **Exhibit 12**. Similarly, adidas recently launched its "Sport 15" advertising campaign, which represents adidas's biggest ad spend in the United States. The campaign features soccer superstar Lionel Messi, Derrick Rose of the Chicago Bulls, and DeMarco Murray of the Philadelphia Eagles. A February 13, 2015, article from *AdWeek* describing adidas's Sport 15 advertising campaign is attached as **Exhibit 13**.

38.     As a result of adidas's extensive use and promotion of the Three-Stripe Mark, adidas has built up and now owns extremely valuable goodwill that is symbolized by the Mark. The purchasing public has come to associate the Three-Stripe Mark with adidas.

**C.     The SUPERNOVA Mark**

39.     Since 1998, adidas has manufactured, sold, and promoted footwear under its well-known SUPERNOVA Mark; and for over a decade, adidas has manufactured, sold, and promoted apparel under the SUPERNOVA Mark.

40.     adidas is the owner of a federal trademark registration, Reg. No. 2,784,051, issued by the PTO on November 18, 2003, for the SUPERNOVA Mark covering "athletic footwear." Affidavits have been filed pursuant to Sections 8 and 15 and the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 14**.

41.     adidas has invested hundreds of thousands of dollars to advertise and promote its SUPERNOVA Mark, and it has sold tens of millions of dollars of SUPERNOVA footwear in the United States.

42.     adidas's SUPERNOVA footwear has won various awards, including being named the *Shape* 2014 "Best for Cushioning" shoe and being awarded the *Runner's World* December 2014 Editor's Choice Award and June 2010 Editor's Choice Award. True and correct copies of media articles relating to such awards are attached as **Exhibit 15**.

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

43.     In addition, adidas's SUPERNOVA footwear has been the subject of numerous unsolicited media articles and repeatedly has been hailed as a top running shoe by various trade publications, including *Running Times*, *Outside*, *Footwear News*, *Cutting-Edge Health Prevention*, *Running Network*, *Triathlete Buyer's Guide*, and *Running Competitor*.  Similarly, adidas's SUPERNOVA apparel has been praised by various trade publications, including *Runner's World* and *Women's Health*.  True and correct copies of example trade publication articles related to adidas's SUPERNOVA footwear and apparel are attached as **Exhibit 16**.

44.     As a result of adidas's longstanding use and extensive marketing, advertising, and promotional efforts over the years, the SUPERNOVA Mark is extremely well known among consumers.

**D.     Prior Settlement Agreements Between adidas and Skechers**

<u>The 1995 Agreement</u>

45.     In or around 1994, adidas became aware that Skechers was offering for sale and selling footwear designated "Karl Kani" footwear by Skechers.  It featured parallel stripes on the side of the upper.  As a result, adidas filed a lawsuit (designated as civil action number CV-95-0037-ST) for trademark infringement and unfair competition in the United States District Court for the District of Oregon.

46.     adidas and Skechers resolved their dispute by entering into a settlement agreement (the "1995 Agreement"), a true and correct copy of which is attached as **Exhibit 17**.

47.     In the 1995 Agreement, Skechers acknowledged that adidas is the exclusive owner of the Three-Stripe Mark and "agree[d] not to use the THREE STRIPE DESIGN or any mark confusingly similar thereto to the extent that any form of that mark is entitled to protection under state or federal law."  Skechers further agreed in the 1995 Agreement "not to challenge or contest, or assist another in challenging or contesting, adidas's exclusive rights in and to the THREE STRIPE DESIGN mark."

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

<u>Subsequent Agreements</u>

48.    In 2008, 2010, 2011, and 2013, Skechers offered for sale and sold various footwear bearing two and four parallel stripes on the side of the upper that, among other things, infringed and diluted adidas's Three-Stripe Mark.

49.    For example, in 2008, adidas objected to Skechers's sale of certain two and four-stripe shoe designs, examples of which are depicted below:



50.    adidas and Skechers entered into a confidential settlement agreement in September 2008 (the "September 2008 Agreement").  Skechers subsequently ceased sales of the shoes depicted above in Paragraph 49.

17-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

51.    A year later, in 2009, adidas again found Skechers offering for sale and selling footwear bearing two and four parallel stripes on the side of the upper that, among other things, infringed and diluted adidas's Three-Stripe Mark, examples of which are depicted below:

 

 

 

52.    adidas and Skechers entered into a confidential settlement agreement in February 2010 (the "February 2010 Agreement").  Skechers subsequently ceased sales of the shoes depicted above in Paragraph 51.

53.    Within that same year, Skechers yet again began offering for sale and selling footwear bearing two and four parallel stripes on the side of the upper in a manner likely to cause confusion with and to dilute adidas's Three-Stripe Mark, examples of which are depicted below:

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222



**STYLE NUMBER 21075**

**STYLE NUMBER 50954**



**STYLE NUMBER 62025**

**STYLE NUMBER 21574**



**STYLE NUMBER 50661**

**STYLE NUMBER 46757**

19- COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1







54.    adidas and Skechers once again entered into a confidential settlement agreement, on December 22, 2010 (the "December 2010 Agreement").  Skechers subsequently ceased sales of the shoes depicted above in Paragraph 53.

20-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

55.     Only months after the parties entered into the December 2010 Agreement, adidas yet again discovered that Skechers was offering for sale and selling footwear bearing two and four parallel stripes on the side of the upper that, among other things, infringed and diluted adidas's Three-Stripe Mark, examples of which are depicted below:



**Style No. 46757**
**Style Name: Compulsions Canyon Run**



**Style No. 46596**
**Style Name: Genesis Engave**



**Style No. 62039**
**Style Name: Prepare**



**Style No. 51021**
**Style Name: Spiker II Determine**



**Style No. 62465**
**Style Name: Lazarus**

21- COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

56.     adidas and Skechers once again entered into a confidential settlement agreement, on November 7, 2011 (the "2011 Letter Agreement").  Skechers subsequently ceased sales of the shoes depicted above in Paragraph 55.

57.     Approximately a year after the 2011 Letter Agreement, adidas yet again discovered that Skechers was selling footwear bearing confusingly similar imitations of adidas's Three-Stripe Mark, examples of which are depicted below.

**Gander Transport**
**(Style No. 63331)**



**Krove Donato**



58.     adidas and Skechers once again entered into a confidential settlement agreement, on April 26, 2013 (the "2013 Agreement").  Skechers subsequently ceased sales of the shoes depicted above in Paragraph 57.

**E.     Skechers's Current Unlawful Activities**

59.     Notwithstanding the 1995 Agreement and the subsequent 2008 – 2013 Agreements—and in continuing, blatant disregard of adidas's rights—Skechers yet again is importing, producing, marketing, distributing, offering for sale, and selling footwear in interstate commerce bearing a confusingly similar imitation of the adidas Marks.

60.     In perhaps its most egregious infringement to date, Skechers is producing, marketing, distributing, offering for sale, and selling the STAN SMITH Knock-Off.  Skechers's knock-off imitates every element of the STAN SMITH Trade Dress (as shown below):

22-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

**adidas's STAN SMITH Footwear**          **Skechers's Infringing Footwear**

          

| STAN SMITH Footwear | Infringing Footwear |
|---|---|
| Classic tennis-shoe profile | Same |
| Sleek white leather upper | Same |
| Angled stripes comprised of perforations | Same |
| Defined stitching on the side of the shoe enclosing the perforations | Same |
| Prominent, raised colored heel tab | Same |
| Mustache-shaped heel tab | Same |
| Flat tonal white rubber outsole | Same |

61.     Beyond these elements, Skechers went even further to copy other elements of adidas's STAN SMITH shoe, including:  placing a strip of leather along the center of the heel, creating a groove around the top of the sole, and placing stitching in places along the groove.

62.     Skechers clearly intends the Stan Smith Knock-Off to be a confusingly similar imitation of adidas's STAN SMITH Trade Dress, as Skechers's website has been directing consumers who search for "adidas STAN SMITH" to the Stan Smith Knock-Off.  A true and correct copy of the search results for "adidas STAN SMITH" on Skechers's website, as of September 1, 2015, is attached as **Exhibit 18**.  A video capture of the performance of this search on the same date will be conventionally filed as **Exhibit 19**.

63.     Skechers's derogation of adidas's rights is further evidenced in the source code for Skechers's website, which features the terms "stan smith" and "adidas original."  A true and correct copy of the source code of Skechers's website as it existed on September 7, 2015, is attached as **Exhibit 20**.

23-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

64.    To add insult to injury, Skechers has expanded its infringing enterprise to include sales of footwear bearing adidas's famous Three-Stripe Mark, such as the shoe shown below.



65.    Even worse, Skechers's program of infringement extends to adidas's well-known SUPERNOVA Mark.  A true and correct copy of the webpage offering Skechers footwear for sale under the SUPERNOVA Mark as it existed on September 7, 2015, is attached as **Exhibit 21**.

66.    Skechers was familiar with adidas's STAN SMITH Trade Dress, Three-Stripe Mark, and SUPERNOVA Mark when Skechers created, imported, and began advertising and selling the Infringing Footwear.

67.    Skechers further was aware that the sale of the Infringing Footwear would likely cause confusion among consumers and would dilute adidas's rights in the STAN SMITH Trade Dress and the Three-Stripe Mark.  Indeed, on information and belief, Skechers knowingly, willfully, intentionally, and maliciously adopted and used a substantially indistinguishable and confusingly similar imitation of the STAN SMITH Trade Dress and Three-Stripe Mark. Specifically, on information and belief, Skechers intentionally designed and manufactured footwear bearing adidas's STAN SMITH Trade Dress and Three-Stripe Mark to mislead and deceive consumers into believing it was manufactured, sold, authorized, or licensed by adidas.

68.    On further information and belief, Skechers knowingly, willfully, intentionally, and maliciously adopted adidas's SUPERNOVA Mark for use in connection with its footwear in order to further mislead and deceive consumers into believing Skechers's footwear was manufactured, sold, authorized, or licensed by adidas.

24-  COMPLAINT

21184-0111/127843147.1

69.    The Infringing Footwear distributed, offered for sale, and sold by Skechers is not manufactured by adidas, nor is Skechers associated, affiliated, or connected with adidas, or licensed, authorized, sponsored, endorsed, or approved by adidas in any way.

70.    adidas used its STAN SMITH Trade Dress, its Three-Stripe Mark, and its SUPERNOVA Mark extensively and continuously long before Skechers began offering for sale or selling the Infringing Footwear.

71.    The Infringing Footwear is similar to, and competes with, footwear sold by adidas, and the parties' respective footwear is sold through overlapping channels of trade.

72.    Skechers's use of the adidas Marks and confusingly similar imitations of the adidas Marks is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the footwear sold by Skechers is manufactured or authorized by, or in some manner associated with adidas, which it is not.

73.    The likelihood of confusion, mistake, and deception engendered by Skechers's misappropriation of the adidas Marks is causing irreparable harm to the goodwill symbolized by the adidas Marks and the reputation for quality that they embody.

74.    This misappropriation is particularly damaging with respect to those persons who perceive a defect or lack of quality in the Infringing Footwear.

75.    On information and belief, Skechers continues to use the adidas Marks and confusingly similar imitations of the adidas Marks in connection with the sale of products that directly compete with those offered by adidas.  Skechers began selling these imitations well after adidas had established protectable rights in the adidas Marks, and well after the Three-Stripe Mark and STAN SMITH Trade Dress had become famous.

76.    Skechers has shown a callous disregard for adidas's trademark and trade dress rights, as well as for the numerous Agreements Skechers has entered into with adidas.  Skechers previously agreed expressly not to use the Three-Stripe Mark or any confusingly similar mark,

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

and it further agreed to discontinue manufacturing and selling footwear bearing confusingly similar imitations of adidas's Three-Stripe Mark.  Skechers thus has acted in bad faith, with malicious intent, and in knowing disregard of adidas's rights.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark and Trade Dress Infringement)

77.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

78.     Skechers's use of confusingly similar imitations of the adidas Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Skechers's goods are manufactured or distributed by adidas, or are associated or connected with adidas, or have the sponsorship, endorsement, or approval of adidas.

79.     Skechers has used marks confusingly similar to the adidas Marks in violation of 15 U.S.C. §§ 1114 and 1125(a).  Skechers's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by the adidas Marks, for which adidas has no adequate remedy at law.

80.     Skechers's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the adidas Marks to adidas's great and irreparable harm.

81.     Skechers has caused and is likely to continue causing substantial injury to the public and to adidas, and adidas is entitled to injunctive relief and to recover Skechers's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition)

82.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

26-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

83.     Skechers's use of the adidas Marks and confusingly similar imitations of the adidas Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Skechers's goods are manufactured or distributed by adidas, or are affiliated, connected, or associated with adidas, or have the sponsorship, endorsement, or approval of adidas.

84.     Skechers has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a).  Skechers's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by the adidas Marks, for which adidas has no adequate remedy at law.

85.     Skechers's actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the adidas Marks to the great and irreparable injury of adidas.

86.     Skechers's conduct has caused, and is likely to continue causing, substantial injury to the public and to adidas.  adidas is entitled to injunctive relief and to recover Skechers's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### THIRD CLAIM FOR RELIEF
**(Federal Trademark and Trade Dress Dilution)**

87.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

88.     For decades, adidas has exclusively and continuously promoted and used the registered Three-Stripe Mark and the STAN SMITH Trade Dress both in the United States and throughout the world.  These marks thus became famous and well-known symbols of adidas and its products well before Skechers offered for sale the Infringing Footwear.

27-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

89.     Skechers is making use in commerce of marks that dilute and are likely to dilute the distinctiveness of adidas's Three-Stripe Mark and STAN SMITH Trade Dress by eroding the public's exclusive identification of the famous Three-Stripe Mark and STAN SMITH Trade Dress with adidas, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish adidas's goods.

90.     Skechers's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark and STAN SMITH Trade Dress or to cause dilution of the Three-Stripe Mark and STAN SMITH Trade Dress to the great and irreparable injury of adidas.

91.     Skechers has caused and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous and distinctive Three-Stripe Mark and STAN SMITH Trade Dress in violation of 15 U.S.C. § 1125(c).  adidas therefore is entitled to injunctive relief and to Skechers's profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF
### (State Trademark Dilution with respect to the Three-Stripe Mark)

92.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

93.     adidas has extensively and continuously promoted and used the registered Three-Stripe Mark both in the United States and throughout the world, and the mark had thereby become a distinctive, famous, and well-known symbol of adidas's goods and services well before Skechers designed, sourced, manufactured, imported, distributed, marketed, promoted, offered for sale, or sold the Three-Stripe Knock-Off.  The Three-Stripe Mark is widely

28-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

recognized by the general consuming public as a designation that adidas is the source of the goods bearing the Three-Stripe Mark.

94.     Skechers's unauthorized imitations of adidas's Three-Stripe Mark dilute and are likely to dilute the distinctiveness of the mark by eroding the public's exclusive identification of this famous and well-known mark with adidas, and tarnishing and degrading the positive associations and prestigious connotations of the Three-Stripe Mark, and otherwise lessening the capacity of the mark to identify and distinguish adidas's goods and services.

95.     Skechers is causing and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous Three-Stripe Mark in violation of the Oregon anti-dilution statute, O.R.S. § 647.107 (2009), as well as the anti-dilution laws of several other states, including Alabama, ALA. CODE § 8-12-17 (2009); Alaska, ALASKA STAT. § 45.50.180 (Michie 2009); Arizona, ARIZ. REV. STAT. ANN. § 44-1448.01 (West 2009); Arkansas, ARK. CODE ANN. § 4-71-213 (2009); California, CAL. BUS. & PROF. CODE § 14247 (West 2009); Connecticut, CONN. GEN. STAT. ANN § 35-11i(c) (West 2009); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2009); Florida, FLA. STAT. ANN. § 495.151 (West 2007); Georgia, GA. CODE ANN. § 10-1-451 (2009); Hawaii, HAW. REV. STAT. ANN. § 482-32 (Michie 2009); Idaho, IDAHO CODE § 48-513 (Michie 2009); Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2009); Iowa, IOWA CODE ANN. § 548.113 (West 2009); Indiana, IN. CODE 24-2-13.5 (West 2009); Kansas, KAN. STAT. ANN. § 81-214 (2009); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West 2009); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 2000); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110H, § 13 (West 2009); Minnesota, MINN. STAT. ANN. § 333.285 (West 2009); Mississippi, MISS. CODE. ANN. § 75-25-25 (2009); Missouri, MO. ANN. STAT. § 417.061(1) (West 2009); Montana, MONT. CODE ANN. § 30-13-334 (2009); Nebraska, NEB. REV. STAT. ANN. § 87-140 (Michie 2009); Nevada, NEV. REV. STAT. 600.435 (2007); New

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2009); New Jersey, N.J. STAT. ANN. 56:3-13.20 (West 2009); New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie 2009); New York, N.Y. GEN. BUS. Law § 360-l (2009); Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124 (West 2009); Rhode Island, R.I. GEN. LAWS § 6-2-12 (2009); South Carolina, S. C. CODE ANN. § 39-15-1165 (2009); Tennessee, TENN. CODE ANN. § 47-25-513 (2009); Texas, TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2009); Utah, UT. CODE ANN. § 70-3a-403 (2009); Washington, WASH. REV. CODE ANN. § 19.77.160 (West 2009); West Virginia, W.V. STAT. ANN. 47-2-13 (Michie 2009); and Wyoming, WYO. STAT. ANN. § 40-1-115 (Michie 2009). adidas therefore is entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

96.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

97.    Skechers has been and is passing off its goods as those of adidas, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Skechers's goods, causing a likelihood of confusion as to Skechers's affiliation, connection, or association with adidas, and otherwise damaging the public.

98.    Skechers's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including California CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 2009); Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2009); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2009); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (2009); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2009); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2009); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2009); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2009); Nebraska,

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

NEB. REV. STAT. §§ 87-301 to 87-306 (2009); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 2009); New York, N.Y. GEN. BUS. Law § 349 (McKinney 2009); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (Baldwin 2009); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 2009).

99.     Skechers's unauthorized use of confusingly similar imitations of the adidas Marks has caused and is likely to cause substantial injury to the public and to adidas.  adidas, therefore, is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

100.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

101.     Skechers's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of adidas.  adidas has no adequate remedy at law for this injury.

102.     On information and belief, Skechers acted with full knowledge of adidas's use of, and statutory and common law rights to, the adidas Marks and without regard to the likelihood of confusion of the public created by Skechers's activities.

103.     Skechers's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the adidas Marks to the great and irreparable injury of adidas.

104.     As a result of Skechers's acts, adidas has been damaged in an amount not yet determined or ascertainable.  At a minimum, however, adidas is entitled to injunctive relief, to an accounting of Skechers's profits, damages, and costs.  Further, in light of the deliberately fraudulent and malicious use of the adidas Marks and confusingly similar imitations of the adidas

31-  COMMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

Marks, and the need to deter Skechers from engaging in similar conduct in the future, adidas additionally is entitled to punitive damages.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Contract)

105.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

106.    The 1995 Agreement is a valid contract.

107.    The 1995 Agreement was supported by adequate consideration.

108.    Skechers breached the 1995 Agreement when it manufactured, offered for sale, and/or sold the current Infringing Footwear bearing two and four stripes in a manner confusingly similar to adidas's Three-Stripe Mark.

109.    Skechers's breach of its contractual obligations has damaged adidas, and Skechers's ongoing breach of the 1995 Agreement by selling the Infringing Footwear bearing a confusingly similar imitation of adidas's Three-Stripe Mark is inflicting irreparable harm on adidas.

## PRAYER FOR RELIEF

WHEREFORE, adidas prays that:

1.    Skechers and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Skechers, or in concert or participation with Skechers, and each of them, be enjoined both preliminarily and permanently from:

  a.    using the Three-Stripe Mark or any other copy, reproduction, colorable imitation, or simulation of adidas's Three-Stripe Mark on or in connection with Skechers's goods;

32-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

b.  using the STAN SMITH Trade Dress or any other copy, reproduction, colorable imitation, or simulation of adidas's STAN SMITH Trade Dress on or in connection with Skechers's goods;

c.  using the SUPERNOVA Mark or any copy, reproduction, colorable imitation, or simulation of adidas's SUPERNOVA Mark or any mark that is a confusingly similar imitation of the SUPERNOVA Mark on or in connection with Skechers's goods;

d.  using any trademark, name, logo, design, or source designation of any kind on or in connection with Skechers's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to adidas's trademarks, trade dresses, names, or logos;

e.  using any trademark, name, logo, design, or source designation of any kind on or in connection with Skechers's goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by adidas, or are sponsored or authorized by adidas, or are in any way connected or related to adidas;

f.  using any trademark, name, logo, design, or source designation of any kind on or in connection with Skechers's goods that dilutes or is likely to dilute the distinctiveness of adidas's trademarks, trade dresses, names, or logos;

g.  passing off, palming off, or assisting in passing off or palming off Skechers's goods as those of adidas, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

33-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

21184-0111/127843147.1

      h.  advertising, promoting, offering for sale, or selling the Infringing

Footwear or other similar goods.

2.     Skechers be ordered to cease offering for sale, marketing, promoting, and selling, to remove from its retail stores, and to recall all products sold under or bearing a confusingly similar imitation of the adidas Marks, which are in Skechers's possession or have been shipped by Skechers or under its authority, to any customer, including but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Skechers;

3.     Skechers be ordered to deliver up for impoundment and for destruction, all footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationary, or other materials in the possession, custody or under the control of Skechers that are found to adopt, infringe, or dilute any of adidas's trademarks, trade dresses, or that otherwise unfairly compete with adidas and its products;

4.     Skechers be compelled to account to adidas for any and all profits derived by Skechers from the sale or distribution of infringing goods as described in this Complaint;

5.     adidas be awarded all damages caused by the acts forming the basis of this Complaint;

6.     Based on Skechers's knowing and intentional use of the adidas Marks and confusingly similar imitations of the adidas Marks, the damages awarded be trebled and the award of Skechers's profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b);

7.     Skechers be required to pay to adidas the costs and reasonable attorneys' fees incurred by adidas in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

34-  COMPLAINT

**Perkins Coie** LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

8.    Based on Skechers's willful and deliberate infringement and/or dilution of adidas's marks, and to deter such conduct in the future, adidas be awarded punitive damages;

9.    adidas be awarded prejudgment and post-judgment interest on all monetary awards; and

10.    adidas have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

adidas respectfully demands a trial by jury on all claims and issues so triable.

DATED:  September 14, 2015          **PERKINS COIE LLP**

By: s/ Stephen M. Feldman
    Stephen M. Feldman, OSB No. 932674
    SFeldman@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

R. Charles Henn Jr. (*pro hac vice* pending)
chenn@kilpatricktownsend.com
Charles H. Hooker III (*pro hac vice* pending)
chooker@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404.815.6500
Facsimile:  404.815.6555

Attorneys for Plaintiffs

35-  COMPLAINT

**Perkins Coie LLP**
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222